# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

MAUKALI DEFLORA,
            Appellant,

            v.

DEPARTMENT OF THE NAVY,
            Agency.

DOCKET NUMBER
SF-0752-20-0001-I-1

DATE: July 15, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Saku E. Ethir</u>, Esquire, Riverside, California, for the appellant.

<u>Veronica Hale</u> and <u>Robert Aghassi</u>, Barstow, California, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to VACATE the administrative judge's analysis of whether the agency proved that it would have taken the same removal action in the absence of the appellant's alleged disclosure, we AFFIRM the initial decision.

## DISCUSSION OF ARGUMENTS ON REVIEW

The following facts, as further described throughout the parties' submissions and the administrative judge's initial decision, are not disputed. The appellant held the position of Police Officer for the agency's Marine Corps Logistics Base in Barstow, California. Initial Appeal File (IAF), Tab 28, Initial Decision (ID) at 2. The agency proposed his removal, based on the following charges, each concerning a separate incident on a separate date: (1) Off-Duty Misconduct; (2) Refusal to Cooperate in an Official Investigation; (3) Failing to Submit to Base Security Check; and (4) Conduct Unbecoming. ID at 2-5; IAF, Tab 5 at 23-24. After the appellant responded, the deciding official sustained each charge and removed the appellant. ID at 5; IAF, Tab 5 at 10-11.

The appellant filed the instant appeal, challenging his removal and raising an affirmative defense of whistleblower reprisal. IAF, Tab 1 at 6-10. The administrative judge developed the record and held a hearing over 3 days, before sustaining the removal action. IAF, Tab 15, Hearing Compact Disc (HCD1), Tab 17, Hearing Compact Disc (HCD2), Tab 25, Hearing Compact Disc (HCD3);

ID at 44. She found that the agency proved its charges, ID at 7-31, nexus, ID at 31-32, and the reasonableness of its penalty, ID at 32-36, while the appellant failed to prove his whistleblower reprisal claim, ID at 36-43.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. He argues that the administrative judge improperly denied some witnesses, exhibited bias, and erred in weighing the evidence to find that the agency proved each charge. *Id*. at 8-26. The appellant does not present any arguments concerning the administrative judge's denial of his affirmative defense, or her determinations regarding nexus and the reasonableness of the agency's penalty. The agency has filed a response. PFR File, Tab 3.

The appellant has not shown that the administrative judge abused her discretion in denying witnesses.

In a prehearing submission, the appellant requested a number of witnesses, including brief descriptions of what testimony they might provide. IAF, Tab 10 at 7-11. To illustrate, for quite a few of these proposed witnesses, he merely indicated that they would "[t]estify to the character of [appellant]." *Id*. at 8-10. The administrative judge approved 15 of the appellant's witnesses, but denied another 21. IAF, Tab 11 at 4. Although the appellant requested reconsideration, and provided additional information about a few, IAF, Tab 12 at 4-5, the administrative judge did not reach a different conclusion about any of the requested witnesses, HCD1 (opening remarks).

On review, the appellant asserts that the administrative judge should not have denied any of his witnesses. PFR File, Tab 1 at 8-9. In making this assertion, he does not present particularized arguments about any individual witness. Instead, the appellant summarily asserts that the denied witnesses would have provided testimony regarding matters such as the appropriateness of the discipline and the appellant's credibility. *Id*. at 9.

An administrative judge has wide discretion under 5 C.F.R. § 1201.41(b)(8), (10) to exclude witnesses when it has not been shown that their testimony

would be relevant, material, and nonrepetitious. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985). We have reviewed the appellant's submissions from below regarding proposed witnesses, along with the administrative judge's rulings about the same. However, we find no reason to conclude that the administrative judge abused her discretion. The appellant's conclusory argument on review does not persuade us otherwise.

<u>The appellant has not shown that the administrative judge exhibited bias or otherwise erred in the way that she presided over the hearing.</u>

On review, the appellant's counsel notes that the administrative judge adjudicated the instant appeal while she—the appellant's counsel—had another petition pending with the Board, in which she alleged that the same administrative judge exhibited bias in an unrelated case. PFR File, Tab 1 at 9-10 (referencing *Lybbert v. Department of the Navy*, MSPB Docket No. SF-0752-19-0498-I-1). The appellant's counsel seems to suggest that the administrative judge should have recused herself from the instant appeal, due to that pending bias argument in an unrelated appeal. *Id*. However, the appellant and his counsel have not directed us to anything that would suggest they properly raised this matter below and preserved it for review. *See* 5 C.F.R. § 1201.42(b) (providing that a party may request that a judge withdraw for bias, but must do so promptly and must provide the reason for the request in an affidavit or sworn statement), (c) (providing that if the judge denies a party's motion to recuse, the party must request interlocutory appeal or the matter will be waived).

The appellant also argues that the administrative judge exhibited bias in the instant appeal. PFR File, Tab 1 at 10-13. According to the appellant, the administrative judge repeatedly interrupted the cross-examination of witnesses with a condescending and adversarial tone, she improperly prevented the appellant from pursuing some lines of questioning, and she was particularly aggressive when questioning the appellant's witnesses. *Id*. Although the appellant indicates that this is reflected in the record, he has not directed us to

any particular point within the 3-day hearing. *See* IAF, Tabs 16, 18, 26; HCD1; HCD2; HCD3.

In furtherance of his claim of bias in this appeal, the appellant argues that numerous individuals connected to the hearing—either because they were testifying witnesses or because they were otherwise able to hear the proceedings—all expressed shock at the administrative judge's conduct. PFR File, Tab 1 at 13-16. Although he identifies these individuals by name, the appellant did not present sworn statements from these individuals or any other supportive evidence.

Unlike his other assertions regarding bias, which are not particularly specific, the appellant described one event in detail regarding the administrative judge's alleged impropriety during the hearing. *Id*. at 16-17. In short, he alleges that the administrative judge berated the appellant's counsel for adjusting the volume to the video teleconference equipment as she tried to eliminate feedback. *Id*.

As an initial matter, we note that the appellant's arguments of bias are largely lacking in pertinent details. *See* 5 C.F.R. § 1201.114(b) (a petition for review must state a party's objections to the initial decision, including all of the party's legal and factual arguments, and must be supported by specific references to the record). Although we have reviewed portions of the hearing, as needed to address some of the appellant's other arguments, we will not pore through the entirety of a 3-day hearing in search of objectionable behavior based on generic complaints of bias.

We next note that, when a party makes a claim of bias or prejudice against an administrative judge, he must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evince "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of*

*the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

With these standards in mind, we discern no reason to conclude that the appellant has presented any basis for new adjudication. Although it is evident that the appellant disagrees with the manner in which the administrative judge presided over this case, he has not shown that she abused her discretion or exhibited conduct warranting new adjudication. *See, e.g.*, *Tisdell v. Department of the Air Force*, 94 M.S.P.R. 44, ¶ 13 (2003) (recognizing that an administrative judge has wide discretion to control the proceedings).

The agency proved each of its charges.

Again, the agency based its removal action on four charges. IAF, Tab 5 at 23-24. Based in large part on the credibility of witness testimony, the administrative judge found that the agency proved each. ID at 7-31. On review, the appellant challenges those findings. PFR File, Tab 1 at 18-26.

*Off-duty misconduct*

In its first charge, off-duty misconduct, the agency alleged that the appellant and two individuals from another car got into an altercation while driving on the interstate. IAF, Tab 5 at 23. This resulted in both cars pulling over to the shoulder, at which point the appellant exited his vehicle with his badge displayed and "brandished [his] personal firearm" on the two individuals from the other car. *Id*.

To find that the agency proved this charge, the administrative judge considered evidence that included the police report from a responding Highway Patrol Officer, who interviewed the appellant on the date of the incident, as well as the appellant's subsequent explanations, provided in connection with this removal action. ID at 7-14 (referencing, *e.g.*, IAF, Tab 5 at 20, 31-38). In short, the administrative judge found that the only dispute was whether the appellant "brandished" his weapon, with the police report indicating that he did, whereas

the appellant's testimony indicated that he did not. ID at 8-9. She credited the former, rather than the latter. ID at 8-14. While doing so, the administrative judge considered, but rejected, the appellant's various arguments about the reliability of the Highway Patrol Officer's report, including arguments about the officer being biased. ID at 9-11. She also found that the appellant's explanations of what occurred morphed over time, with his after-the-fact explanations made in connection with his removal being both inconsistent and inherently implausible. ID at 11-13.

On review, the appellant accurately notes that he did testify at the hearing, but the Highway Patrol Officer did not, and the other individuals involved in the road rage incident underlying this charge were never located, so their version of events is not in the record. PFR File, Tab 1 at 18. Because of this, the appellant essentially argues the administrative judge was precluded from discrediting his testimony. *Id*. at 18-22. We are not persuaded.

The administrative judge explained that her credibility analyses would be guided by *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), while the value she assigned to hearsay evidence would be guided by *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-87 (1987). ID at 6-7. Particularly relevant to this charge, some of the factors described in *Hillen* for purposes of weighing credibility include any prior inconsistent statements by the witness, the inherent improbability of the witness's version of events, and the witness's demeanor. *Hillen*, 35 M.S.P.R. at 458.

As the administrative judge recognized, the appellant's explanation of what happened during the road rage incident varied over time. According to the police report, which was based on the appellant's description of events, the appellant admitted that he never saw the other parties to the road rage incident with a weapon, but he nevertheless drew his firearm because one of those two individuals had a hand behind their back when everyone pulled to the shoulder of the interstate and exited their vehicles. IAF, Tab 5 at 36. The Highway Patrol

Officer surmised that the appellant "acted under his own personal aggression towards the [other parties], and he did not use sound judgment." *Id*. at 38. He further concluded, based on the appellant's own statement, that the appellant violated California's brandishing law. *Id*.

Unlike the statement attributed to the appellant in the police report, the appellant's written response to the agency's discipline indicated that the individual mentioned above "appeared to have a weapon on his hand." *Id*. at 20. Yet, when testifying at the hearing, the appellant indicated that he clearly saw that this individual had a firearm in hand. ID at 12; HCD2 (testimony of the appellant).

It is not apparent to us why the agency failed to produce the Highway Patrol Officer as a witness to testify at the hearing below. *See Borninkhof*, 5 M.S.P.R. at 87 (recognizing that the availability of a person with firsthand knowledge to testify at the hearing is one factor regarding the probative value of hearsay evidence). However, his police report is signed, many details contained within are consistent with the appellant's admissions, and the officer was a disinterested party. IAF, Tab 5 at 31-38; *see Borninkhof*, 5 M.S.P.R. at 87 (recognizing these as additional factors regarding the probative value of hearsay evidence).

In any event, even if we assigned limited value to the police report, the evolution of the appellant's story remains striking. If the appellant clearly saw the individual with a firearm, as claimed during his hearing testimony, one would expect that the written statement he produced in concert with his attorney would have stated the same. Instead, it includes notably more ambiguous language—that the individual "appeared" to have a "weapon." Therefore, we agree with the administrative judge's recognition that the appellant's testimony was inconsistent with his prior written statement. ID at 13. We also discern no basis for disturbing the administrative judge's detailed explanation for why she found portions of the appellant's testimony inherently implausible, particularly his

explanation of what happened in the moments leading up to both vehicles pulling over to the shoulder of the interstate, which essentially placed all the blame for the road rage incident on the other party and none of the blame on himself. ID at 11.

Finally, we note that the administrative judge was in the best position to observe the appellant's demeanor. Her credibility findings are, therefore, entitled to deference. ID at 13-14; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1300-01 (Fed. Cir. 2002) (recognizing that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing, and can overturn such determinations only when it has "sufficiently sound" reasons for doing so). Accordingly, we find no reason to reach a conclusion different than the administrative judge regarding the appellant's credibility or the off-duty misconduct charge. The agency met its burden of proving this charge by preponderant evidence.

*Refusal to Cooperate in an Official Investigation*

The agency's second charge was "Refusal to Cooperate in an Official Investigation." IAF, Tab 5 at 23-24. In short, the accompanying narrative alleged that the appellant had relayed the story of an altercation between two other officers to another individual, but then refused multiple directives to cooperate with the resulting administrative investigation about the same. *Id*.

While considering this charge, the administrative judge discussed the testimony of numerous individuals involved, particularly that of the appellant, the investigator, and the Police Chief. ID at 14-18. She recognized that the appellant testified that he merely delayed answering questions about the altercation, and did so with the approval of the investigator. ID at 16-18 (citing HCD2 (testimony of the appellant); HCD3 (testimony of the appellant)). But she also recognized testimony to the contrary from the investigator and the Police Chief, who described the appellant as refusing to cooperate, multiple times, even when

warned that he could be disciplined. ID at 16-18 (citing HCD1 (testimony of the investigator); HCD2 (testimony of Police Chief)).

The administrative judge credited the testimony of the investigator and Police Chief over that of the appellant for a few reasons. ID at 18-21. One of those reasons was what the administrative judge characterized as the appellant's inherent bias, because his version of events was provided in response to his pending removal. ID at 18. To the extent that she was discounting the appellant's testimony merely because it was self-serving, this was improper. *See Baldwin v. Department of Veterans Affairs*, 111 M.S.P.R. 586, ¶ 23 (2009) (recognizing that, although witness bias is a factor in resolving credibility, the Board does not discount testimony merely because it is self-serving). Nevertheless, the administrative judge's other credibility findings remain valid, and they support the same conclusion regarding the agency's version of events being more credible than the appellant's. For example, the administrative judge found that three witnesses—the investigator, the Police Chief, and an individual with whom the appellant confided—all provided testimony that was both consistent and supportive of the agency's allegations, while the appellant alone provided a different version of events. ID at 17-19 (citing, *e.g.*, HCD1 (testimony of the Command Sergeant Major)). The administrative judge also found the appellant's version of events inherently improbable for several reasons, including all the other instances of the appellant engaging in loud, confrontational behavior in the workplace. ID at 19-21.

On review, the appellant essentially reiterates his testimony from below, asserting that he never refused to cooperate with the investigation, but instead asked for, and was granted, a delay so he could get others involved, including a union president and someone from the Naval Criminal Investigative Service. PFR File, Tab 1 at 23-25. However, this argument is not a sufficiently sound basis for us to disturb the administrative judge's findings to the contrary.

*Failing to Submit to Base Security Check*

The agency's third charge was "Failing to Submit to Base Security Check." IAF, Tab 5 at 24. In this charge, the agency alleged that the appellant requested permission to bypass a random security check at the main gate to the base, and the responding officer denied him permission, but the appellant nevertheless drove through the out-bound lane to bypass the security check. *Id*.

The administrative judge noted that the only substantive dispute regarding this charge was whether the appellant had permission to drive through the out-bound lane and avoid the security check. ID at 22. The charge alleged that the appellant requested permission, but the responding officer waived his finger back and forth to gesture no. IAF, Tab 5 at 24. The appellant claimed that he asked to bypass the security check and the responding officer nodded in the affirmative, and subsequent officers he encountered similarly gave him permission. ID at 22 (citing HCD2 (testimony of the appellant); HCD3 (testimony of the appellant)).

In finding that the agency met its burden of proving this charge, the administrative judge considered the appellant's version of events, but also the versions provided by numerous officers that were manning the security check on the date in question. ID at 22-27. The officers' versions of event are memorialized in contemporaneous written statements, as well as hearing testimony. *E.g.*, IAF, Tab 5 at 61-64. Most notably, the first officer the appellant encountered at the security check explained, in detail, how the appellant requested permission to bypass the security check, and the officer denied the request, but he came to realize that the appellant nevertheless circumvented the security check by driving through the exit lane to the base. *E.g.*, *id*. at 61.

On review, the appellant argues that the administrative judge ignored testimony from two officers he encountered after the first officer—testimony that the appellant characterizes as confirming that he had permission to bypass the security check. PFR File, Tab 1 at 22-23. However, the administrative judge

explicitly discussed the contemporaneous written statements and hearing testimony of those officers. ID at 23-24 (citing, *e.g.*, IAF, Tab 5 at 62, 64). What she concluded was that the first officer denied the appellant's request to bypass the security check and, as the appellant ignored that denial and proceeded, each subsequent officer the appellant encountered mistakenly assumed that another had given him permission to use the outbound lane. ID at 24-25. Therefore, the officers the appellant is referring to did not object as the appellant bypassed the security check, but they did not overrule the officer that had denied the appellant permission either. *Id.* We have reviewed pertinent portions of the hearing testimony and found the same. *E.g.*, HCD2 (testimony of officers encountered secondarily). Although the appellant suggests that his interactions with the subsequent officers amounted to a grant of permission to bypass the security check, negating the charge, we are not persuaded.

*Conduct Unbecoming*

The agency's fourth charge, "Conduct Unbecoming," involved the appellant's personal social media account. IAF, Tab 5 at 24, 72-73, Tab 19 at 4. According to the agency, the appellant posted a news report of a workplace shooting, along with comments that included, "I might set that sh-- off too….B---- better have my money," and "Stop f------ with people on the job stop firing people with 5, 10, 20 years on the job this is what happens." IAF, Tab 5 at 24, 72-73. The agency's charge further alleged that the profile picture associated with this posting was the appellant in his military police uniform, and it occurred shortly after the agency had suspended the appellant for unrelated conduct. *Id.* at 24, 92.

The appellant did not deny the existence of the social media post. He did, however, assert his own innocence by attributing the content to his partner. *E.g.*, *id.* at 19, 21. As the administrative judge analyzed this charge, she considered the testimony of the appellant and this other individual. ID at 28-31. She noted that this other individual testified that he was in a relationship with the appellant,

he regularly accessed the appellant's social media account, and he mistakenly used the appellant's account, rather than his own, to post the objectionable comments. ID at 29 (citing HCD2 (testimony of appellant's partner)). She also noted that the appellant testified that he was altogether unaware of the post until after the agency raised the matter, because he had not accessed his social media account in months. ID at 28-30 (citing HCD2 (testimony of the appellant); HCD3 (testimony of the appellant)).

The administrative judge did not find the testimony of the appellant or his partner credible. ID at 29-30. She found their testimony deeply implausible under the circumstances. *Id*. Among other things, she noted that, if the appellant was careful regarding his social media account, as he claimed, it is unlikely that he would give someone else access to the account and then not access the account for months at a time. *Id*. Additionally, if the appellant's partner accidentally posted the objectionable content to the appellant's account, instead of his own, it is likely that he would have quickly realized the mistake, given the attached profile picture, notifications regarding subsequent "likes" or other activity shown on the post, and the partner's regular accessing of both his social media account and the account of the appellant. ID at 29; IAF, Tab 5 at 72-73. Instead, the administrative judge found that the more likely explanation was that the appellant made the posting, himself, at a time when the agency had recently suspended him. ID at 30; IAF, Tab 5 at 92.

On review, the appellant argues that there was no evidence contradicting his testimony or the testimony of his partner, so it was improper to discredit their explanation for the posts on the appellant's social media account. PFR File, Tab 1 a 26. We disagree. Although the version of events provided by the appellant and his partner is possible, we agree with the administrative judge's well-reasoned explanation for why that version is highly improbable and not credible. *See, e.g., Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she

considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

We must vacate the administrative judge's superfluous findings regarding the whistleblower reprisal claim.

As we previously mentioned, the administrative judge found that the appellant's whistleblower reprisal claim failed. ID at 37-43. Although we agree with this conclusion, we must vacate the administrative judge's superfluous findings.

In an adverse action appeal such as this, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Campbell v. Department of Army*, 123 M.S.P.R. 674, ¶ 11 (2016). In such instances, once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action. *Id.* If an appellant meets this burden, establishing a prima facie case of whistleblower reprisal, the burden shifts to the agency to establish by clear and convincing evidence that it would have taken the same action in the absence of the protected disclosure. *Id.*, ¶ 12.

The administrative judge found that the appellant's claim failed because he did not meet his burden of establishing a prima facie case of whistleblower reprisal. ID at 37-39. The appellant has not argued otherwise on review, and we discern no basis for disturbing this finding by the administrative judge.

Despite her determination that the appellant failed to meet his burden, the administrative judge did not stop her analysis there. Instead, she further found that, even if the appellant had presented a prima facie case of reprisal, the agency proved that it would have taken the same action in the absence of the appellant's alleged disclosure. ID at 39-43. Yet, the Board is precluded from conducting this

superfluous analysis. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 28 (2016) (recognizing that the Board may not proceed to the clear and convincing evidence test if an appellant fails to establish his prima facie case of whistleblower reprisal). Accordingly, we must vacate the administrative judge's findings that the agency proved that it would have taken the same removal action in the absence of the appellant's alleged disclosure.

In conclusion, the agency met its burden of proof and the appellant failed to prove his affirmative defense. Therefore, the administrative judge correctly sustained the appellant's removal.

## NOTICE OF APPEAL RIGHTS[2]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[2] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[3] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

---

[3] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.